UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASALA MAJID JAMES,<br>    Plaintiff,<br>    v.<br>MATTHEW CATE,<br>    Defendant. | Case No. 13-cv-01021-JD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.  INTRODUCTION

Masala James, a state prisoner, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The sole claim in the petition alleges that petitioner was compelled to waive his right to represent himself at trial because he was refused direct access to a law library while in custody and was provided insufficient access to legal materials. Petitioner was represented by counsel at a bench trial and was found guilty.

Petitioner was charged with one count of second degree robbery, and it was alleged that he had fourteen prior convictions, seven of which constituted strikes, and he had served prior prison terms. Clerk's Transcript ("CT") at 1-4. He was found guilty and sentenced to 18 years in prison. CT at 722-31. The specific facts of the underlying crimes are not relevant to the claim in the petition. Petitioner appealed, and the California Court of Appeal affirmed the judgment in a published decision. *People v. James*, 202 Cal. Ct. App. 323 (2012). The California Supreme Court and the United States Supreme Court denied petitions for review. Answer, Exs. F-K.

Petitioner then filed this federal petition for writ of habeas corpus on March 6, 2013. The Court issued an order to show cause why the petition should not be granted. Respondent has filed an answer, and petitioner filed a traverse. The petition is denied.

## II. STANDARD OF REVIEW

This Court may consider a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

Here, the California Supreme Court summarily denied petitioner's habeas petition. The California Court of Appeal, in its opinion on direct review, addressed the claim petitioner raises in the instant petition. The California Court of Appeal thus was the highest court to have reviewed the claims in a reasoned decision, and it is the Court of Appeal's decision that this Court reviews herein. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

### III. LAW LIBRARY ACCESS

#### A. Background

The California Court of Appeal set forth the relevant background information regarding the trial court proceedings:

> Although the record is incomplete on this issue, it appears that James made a successful motion for self-representation, pursuant to *Faretta*, sometime in December 2007. Thereafter, James represented himself at the preliminary hearing and throughout extensive pretrial proceedings. During this time, James filed numerous pretrial motions, including a motion to dismiss prior convictions and a motion to set aside the information.
>
> On December 9, 2008, James, who was in custody throughout these proceedings, filed a motion seeking an order directing the Alameda County Sheriff's Office to provide him escorted access to the county law library. In support of that motion, he submitted, as an exhibit to his declaration, a copy of a "Legal Information Request" form. That form includes a space for the inmate to designate five items that he or she wants to receive. It also states: "In the information request blank lines at the bottom of the form you may ask for specific cases or code sections, and/or general information about a topic that concerns you. [¶] If you want a specific case, please provide as much information as you can such as case name, citation, and year of decision. For example, *People v. Smith*, 1 C.A.4th 233, (1977). [¶] If you want to see a particular law or statute, you may ask for it by a specific reference such as Penal Code section 415, or by subject such as 'Laws or Code sections about disturbing the peace.' [¶] If you want to read general information about a topic that concerns you, ask for information by naming the topic such as parole violations, probation, divorce, child custody, etc." (Some capitalization omitted.)
>
> The Sheriff's Office opposed the motion, arguing that cost and security interests preclude it from personally escorting James, or any other inmate, to a law library. They also argued that James was nonetheless provided constitutionally adequate access to legal resources. A declaration, in opposition to James's motion was provided from Richard Williams, an attorney who owns Legal Research Associates (LRA). Williams and his staff, consisting of paralegals and trained research assistants, provide legal research assistance to inmates housed in Alameda County's jails.
>
> Williams, in his declaration, described the services provided by LRA:
>
> "6. The LRA program operates as follows:
>
> a. An inmate wanting legal research materials completes a Request Form available in the housing units.

3

b. The Request Forms are collected daily by jail staff, logged in there, and then sent by Fax transmission to the office of LRA.

c. The Request Forms are logged in at LRA to show date of receipt and prioritized for pro per inmates and other inmates having immediately impending court dates.

d. LRA staff then collects information responsive to each inmate's Requests and inserts that information into unsealed envelopes addressed to the inmate. (These envelopes are unsealed to allow easy inspection by jail personnel to ensure that nothing improper is being sent to the inmates.)

e. Each day the completed responses are bundled and sent by overnight courier to the county jails. The date each response is returned is logged to establish a record of the time taken by LRA to complete each response. [¶] ... [¶]

"10. The legal resource materials, books and periodicals that are available for LRA to use in responding to inmate requests rival the materials, books and periodicals that are available in the best law libraries in California. LRA maintains substantial electronic subscriptions with Lexis Nexis and Westlaw that enable provision of on-point research material on virtually any issue that an inmate might have. The resources are the most current available. Our electronic library includes all California statutes and cases as well as statutes and cases from all other states, federal statutes and cases, the full Witkin Library, California Jurisprudence, American Jurisprudence, ALR, California Forms of Pleading and Practice (civil), California Criminal Defense Practice, the full Rutter Group publication, California and federal jury instructions, and numerous other state and federal secondary sources. We also have access to forms on the California Judicial Council website, as well as other on line resources.

"11. An inmate who knows which cases, code sections, or sections from various secondary sources she/he wishes to review can obtain them by referring to them by citations. Cases can be obtained by all or a portion of a case name. LRA staff will do a very thorough search, even including altering the spelling of a case name, in an effort to locate a case requested by an inmate. Only after an exhaustive search will LRA send a memo to an inmate advising that we were unable to locate a requested item.

"12. To assist inmates who are frequently unacquainted with or untrained in legal research LRA has developed and compiled approximately 500 topical information packets containing information on subjects that inmates frequently ask about....

"13. These packets enable an inmate to obtain extensive information on a topic of interest without knowing the technical name of a procedure or subject, a specific code section, or a specific research resource. For example, using plain English an inmate can obtain information on homicide or robbery or bail without knowing specific code sections. These packets typically include statutes, text from recognized secondary sources such as Witkin or Cal Jur and,

4

where appropriate, either forms or examples of forms. Packets dealing with specific offenses include standard jury instructions....

"14. Our criminal packets include packets pertaining to criminal procedural issues. For example, there are packets for motions to set aside an information ..., to suppress evidence ..., for a speedy trial, to strike priors, a *Marsden* motion, and preliminary hearings to name a few. There are packets that address sentencing, enhancements, defenses, and writs of habeas corpus, mandamus and prohibition, and civil rights complaints.

"15. Motions and procedural packets include sample motion forms including points and authorities and textual information from treatises such as Witkin and/or Criminal Defense Practice that discuss the procedural format and substantive basis of the motion and/or procedural issue. These secondary sources provide extensive references to cases and statutes relevant to the issue in question. [¶] ... [¶]

"22. ... Once the inmate has a topical packet, he/she can request specific cases, ALR citations, annotated statutes, and/or Shepardization treatment of a citation. In response to Shepardization requests, LRA currently provides the inmate results in the format utilized by West Key Cite that includes information concerning treatment of the case in subsequent decisions."

Denying James's motion, the court (Hon. Kevin Murphy) stated: "It doesn't appear to me that either from your own mind and your own intelligence combined with the access that you have through LRA ... that you have any problem in bringing it to the attention of this Court the motions that you want to make, the ideas that you have, or the things that you're trying to accomplish. [¶] ... I haven't counted the number of cases that you cited, the number of Rules of Court that you've cited, the number of quotes that you have from cases, but it's a lot, and I've spent a lot of time reading the papers that you've filed. [¶] I don't feel I'm in a position of dealing with someone who has simply run into a cement wall and been denied access to or denied the ability to research to read and write and present arguments to the Court."

Trial was scheduled to begin on March 9, 2009. In January 2009, James submitted a motion for a continuance, arguing that he needed more time to prepare a defense because he was limited in his ability to conduct legal research. Judge Murphy granted the motion and set June 1, 2009, as the new trial date. On May 15, 2009, James filed another motion for continuance, raising essentially the same argument. This motion was denied. On June 1, 2009, James asked to be represented by a deputy public defender. James noted, at the time, that he had sought unsuccessfully to continue representing himself with appointment of advisory counsel. The trial date was continued and a deputy public defender thereafter appeared as James's counsel.

In April 2010, James's appointed counsel filed a motion requesting dismissal of the information on the grounds that James's "6th Amendment right to represent himself was sabotaged by the

limitations placed on his opportunity to do legal research, the limitation on possessing CD's in jail that resulted in his having to do his preliminary hearing without access to recorded witness statements, and the denial of his timely request for a continuance of his jury trial that resulted in his being forced to give up his right to represent himself [in] order to protect his right to effective assistance of counsel." In a declaration submitted in support of that motion, James stated: "Alameda County does not have a law library available to its jail inmates. Instead, it has a system that requires inmates to put in requests for legal materials. [¶] ... That system does not give inmates a viable opportunity to do real legal research. It requires the inmate to be able to know what to write on a 'Legal Information Request' form in order to get it. This requirement that one must know in advance what the potential legal issues may be before being able to research any issues creates a great risk that many viable legal issues will be missed by inmates invoking their right to defend themselves. [¶] ... I needed to repeatedly delay my case because the process of having to guess what cases I needed and then wait for the requested cases to be provided to me was so slow and cumbersome."

James's declaration also provided: "On June 1, 2009, I again requested a continuance. It was denied and I was sent to a trial court. When I made my request for a continuance in the trial court, I was told I would have to start picking a jury on Wednesday June 3 whether I was ready or not, and that the only way to avoid that would be to ask that a Public Defender be appointed to represent me. [¶] ... Given a choice of either waiving my Constitutional right to represent myself, or my Constitutional right to effective assistance of counsel, I agreed to waive my right to represent myself. I did not want to give up this right, and feel that I had no choice because the inadequate resources that had been provided to me had made it impossible to be ready and prepared for trial at that time."

At the hearing on the motion, Williams testified regarding the legal research services provided by LRA to jail inmates. Williams testified that James submitted more than 59 requests for materials. LRA complied with each of James's requests within two working days, as mandated by the Alameda County contract.

Judge Kurtz denied James's motion to dismiss, providing the following reasoning: "'[T]he crucial question underlying all [of] defendant's constitutional claims is whether he had reasonable access to the ancillary services that were reasonably necessary for his defense.' [¶] That, I believe, states the law as it exists at this point. Whether or not there is reasonable access. Not absolute access, not access to all that a defendant may wish to have, but rather whether there is reasonable access. [¶] The idea that in-custody inmates would be escorted to the county law library so they can do their legal research, presumably if they're in custody they would have to be accompanied by deputies, to be blunt, strikes me as a bit absurd. That is not in any way a reasonable possibility. [¶] ... [¶] Now, personally I think this is an interesting issue. The United States Supreme Court has ruled in *Faretta* ... that defendants have a right to represent themselves. And I think that ... overwhelmingly, people are going to realize that someone who's

6

> representing himself or herself needs to have access to legal materials. [¶] I think it's also fair to say that given the times we live in, it is naïve to think that resources are unlimited and it is naïve to think that many of our governmental bodies are going to try to comply with the constitutional requirements, but with the lowest use of resources that can be provided. [¶] ... [¶] ... I have reviewed much of the court file, it is in two large volumes. There have been a multitude of motions and requests that have been made. And looking at it, and looking at what's provided, and listening to Mr. Williams, it does appear to me that the system provided by Alameda County, in fact, complies with the constitutional mandate. It is not perfection, but perfection is not required."

*James*, 202 Cal. Ct. App. at 329-34 (footnote omitted). After discussing the relevant state and federal law, the California Court of Appeal denied the claim:

> James's argument, as we understand it, is that his decision to proceed with appointed counsel was coerced because he faced an unconstitutional alternative: proceeding pro se with insufficient access to the legal research materials required to prepare his defense. We thus first consider whether James's constitutional rights were violated by the fact that he lacked direct access to a law library.
>
> . . .
>
> As both Judge Murphy and Judge Kurtz correctly concluded, James was provided "reasonable access" to the services reasonably necessary for his own defense. (*People v. Blair*, *supra*, 36 Cal.4th at p. 734, 31 Cal.Rptr.3d 485, 115 P.3d 1145.) We reject James's contention that the Alameda County jail provides only a "paging" system for access to legal research materials. It does not. "A paging system allows a prisoner to request specific volumes. The significant features of such a system are that the prisoner must know in advance which volumes he will need to review and that the process of ordering and returning books drastically prolongs legal research." (*Toussaint v. McCarthy* (9th Cir.1986) 801 F.2d 1080, 1109, fn. 30 (*Toussaint*).)
>
> We agree with James that it is unrealistic to expect lay persons to "perform legal research effectively by having to designate in advance which pages of a law book are needed, and then designating other pages as a result of reviewing the first designation." For this reason, some true "paging" systems have been condemned as violating the federal constitution. (*Toussaint*, *supra*, 801 F.2d at pp. 1109–1110.) However, the "paging" system at issue in *Toussaint* was limited to advance designation of specifically identified research materials, and permitted an inmate to order only five books per week, which would then be delivered to his or her cell. (*Id*. at p. 1109.) In *Toussaint*, a case involving convicted prison inmates rather than pretrial detainees, the court held that meaningful access to the courts required that a prisoner either be provided with reasonable access to a law library or the state must provide that prisoner legal assistance. (*Id*. at p. 1110.)
>
> The record here shows that James had access, through trained legal research assistants at LRA, to a comprehensive list of legal

7

> materials, including treatises and informational pamphlets. James's requests for legal materials were not limited in number and were directed to experienced professionals, who could provide guidance in his research if he did not have the citation to a specific case or statute. To this point, Williams's declaration provided that, "[i]f any LRA staff member has a question about how to answer an inmate's information request, she/he discusses it with the certified paralegal and/or with me. Together we decide what material best responds to the inmate's request." James could also obtain topical information pamphlets simply by naming a topic, which would then enable him to request specific cases, annotated statutes, additional secondary source material, and Shepardization treatment of a citation. In our view, the services provided by LRA would reasonably satisfy a legal researcher's need to "'brows[e] through various materials in search of inspiration....'" (*Toussaint*, *supra*, 801 F.2d at p. 1110.)
>
> There is nothing in the record that shows James was denied access to any particular legal research material, that LRA failed to fully satisfy any request which James made, or that he was in any way limited in his ability to represent himself effectively when he was in pro se status. In fact, the record shows that, during the year and a half that James represented himself, LRA responded to approximately 80 separate requests which he made for materials. And, while representing himself, James filed numerous pretrial motions, including a motion to dismiss prior convictions and a motion to set aside the information. All of his motions contained citations to what appears to be appropriate legal authority.
>
> It is certainly possible that the pace of James's legal research was slower than it would have been had he direct access to a law library. It is equally possible, if not probable, that the research done on James's behalf by the experienced professionals of LRA was more productive and focused than had he attempted the research directly. The trial court granted James's initial request for a continuance and there is nothing in the record that shows James needed a further continuance of trial because he had been unable to complete research on any particular issue during that year and a half. James's motion for a continuance of the June 1, 2009 trial date merely made a generalized claim that he needed more time to prepare his defense. We cannot say, on this record, that James was denied reasonable access to the services necessary to present a defense.
>
> . . .
>
> Having concluded that the system for inmate legal research in the Alameda County jail did not unconstitutionally interfere with James's *Faretta* right, we must also reject James's contention that his decision to accept the appointment of counsel, on the eve of trial, was the result of any unconstitutional interference. (*See Moore*, *supra*, 51 Cal.4th at p. 1127, 127 Cal.Rptr.3d 2, 253 P.3d 1153.)

*James*, at 334-39.

### B. Legal Standard

Under the Sixth and Fourteenth Amendments, criminal defendants have a right to proceed without counsel and represent themselves at trial when they voluntarily and intelligently elect to do so. *Faretta v. California*, 422 U.S. 806, 807 (1975). The United States Supreme Court has held that the denial of access to a law library cannot provide the basis for federal habeas corpus relief because no Supreme Court case clearly establishes a pro se petitioner's constitutional right to law library access in that context. *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (per curiam); *see also Mendoza v. Carey*, 449 F.3d 1065, 1070-71 (9th Cir. 2006).

### C. Analysis

Petitioner alleges that the lack of suitable law library access compelled him to waive his right to proceed without counsel. Because the Supreme Court specifically held in *Kane* that the denial of law library access cannot provide the basis for habeas relief, the state court opinion denying this claim cannot be an unreasonable application of Supreme Court authority. Petitioner counters that the state court decision was an unreasonable application of *Bounds v. Smith*, 430 U.S. 817 (1977).

In *Bounds,* 430 U.S. at 821, the Supreme Court stated that "prisoners have a constitutional right of access to the courts." However, in *Lewis v. Casey*, 518 U.S. 343, 349, (1996), the Supreme Court stated "that an inmate alleging a violation of *Bounds* must show actual injury." The Court further explained that:

> [b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by *Bounds* is concerned, meaningful access to the courts is the touchstone, and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

*Id*. at 351 (internal quotation marks and citation omitted).

Assuming that *Bounds* is applicable in the habeas context, petitioner has still not established a violation. The trial court and California Court of Appeal described in detail the

9

comprehensive legal resources available to plaintiff and the employees at the outside legal service that provided research assistance. The trial date was also delayed by three months to provide petitioner additional time to prepare. This Court's review of the record also indicates that petitioner's legal filings were well reasoned, and the support provided by the outside legal service was adequate.[1] Petitioner has never articulated a specific argument concerning how not being escorted to a law library hindered his efforts to pursue his case. There are no allegations that petitioner needed to research a specific defense or theory relevant to his case and that he had to be physically at a law library to perform the research. Simply stating that the legal resources were insufficient without providing support or an example of why they were insufficient will not lead to habeas relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). For all these reasons, this claim is denied.

## IV.     CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated: June 9, 2014

_____
JAMES DONATO
United States District Judge

13-cv-01021-JD-_hc

---

[1] Petitioner filed numerous well-written motions supported by case law, including a motion to set aside the information (CT at 190-213), several discovery requests (CT at 261-67), a motion to disqualify the trial judge (CT at 388-93), a motion to dismiss the charges (CT at 458-70), and other miscellaneous motions.